**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION**

| | |
|---|---|
| Cheryl Holland,                               )<br>                                                          )<br>                          Plaintiff,        )<br>                                                          )<br>            v.                                         )<br>                                                          )<br>Life Insurance Company of North    )<br>America d/b/a Cigna and Group     )<br>Benefit Plan for Employees of        )<br>Crossmark, Inc.                              )<br>                                                          )<br>                          Defendants.    )<br>_____) | C/A No.: 8:20-cv-03807-HMH<br><br><br><br>**COMPLAINT**<br>(ERISA)<br><br>(Non-jury) |

Plaintiff Cheryl Holland (hereinafter, "Plaintiff"), complaining of Defendants Life Insurance Company of North America d/b/a Cigna ("LINA") and Group Benefit Plan for Employees of Crossmark, Inc. ("the Plan"), respectfully shows unto this honorable Court the following:

**NATURE OF THE ACTION**

1.     This lawsuit stems from a wrongful denial of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Plaintiff worked for Crossmark for over 10 years as a set merchandiser for the company's retail placement team. Her job was setting up new grocery and retail stores across the Southeast, which included building shelving, unloading trucks, stocking shelves, and lots of driving. (Admin. R. 70.)[1] In June 2017, Plaintiff fell while on vacation and broke her elbow and hurt her back, neck, and shoulder. The impact led to severe upper and lower

---

[1] For ease of reference, citations to the Administrative Record will be indicated as "Admin. R. [page number]."

1

back pain, joint swelling, painful and limited lumbar flexion and extension, limited upper extremity flexion and extension, limited right lateral flexion, limited right rotation, lumbar lordosis, and bilateral hip numbness. Plaintiff has tried nearly every conceivable treatment available, including physical therapy, chiropractic therapy, lumbar epidural steroid injections, lidocaine injections, prescription nerve pain medication, and anti-inflammatories. Despite Plaintiff's credibility and medical documentation from her treating physicians that support her disabling conditions, LINA has wrongfully denied Plaintiff all monthly ERISA long-term disability ("LTD") benefits. As a result, Plaintiff has incurred financial distress, and Plaintiff now seeks back benefits, clarification of rights to future benefits, prejudgment interest, attorney's fees and costs incurred in prosecuting this action, and other equitable remedies from the Defendants for their wrongful denial of benefits as this Court deems just and proper.

## **VENUE AND JURISDICTION**

2.      Plaintiff is a citizen and resident of Newberry County, South Carolina. (Admin. R. 441.)

3.      Plaintiff was employed by CHI Management Group, LLC d/b/a Crossmark ("Crossmark") or its predecessor in interest for about 10 years.

4.      As a Crossmark employee, Plaintiff was eligible to and did participate in certain employee group welfare benefit plans sponsored by Crossmark.

5.      Crossmark provided group long-term disability ("LTD") benefits to eligible employees, and these benefits were funded by a Group Policy (No. FLK-960807) issued by LINA to Crossmark. (Admin. R. 222.)

6.      Crossmark provided the LTD benefits through Defendant Group Benefit Plan for Employees of Crossmark, Inc. (hereinafter "the Plan"), for lack of a better title, as the plan document does not identify its name as required by ERISA).

7.      The Plan is an employee welfare benefit plan as defined by ERISA, 29 U.S.C. §§ 1002(1) and 1132(d)(a) *et seq*.

8.      Plaintiff was a participant in the Plan at all times relevant to her claim for LTD benefits described herein.

9.      Defendant LINA is a subsidiary of Cigna Life Insurance Company (Admin. R. 1) and acts as the insurer, claims administrator, and a fiduciary for the Plan at issue in this lawsuit.

10.     LINA is not authorized by the South Carolina Secretary of State to do business in South Carolina.

11.     LINA is registered with the South Carolina Department of Insurance to offer certain insurance-related products in South Carolina.

12.     Upon information and belief, both Cigna and LINA are entities incorporated in Delaware.

13.     Plaintiff was eligible to receive LTD benefits under the Plan after she became disabled, as that term is defined by the Plan.

14.     Defendants have refused to provide the LTD benefits due to Plaintiff.

15.     Defendants' refusal to provide these LTD benefits was wrongful.

16.     This Court has exclusive jurisdiction over this matter since it alleges causes of action arising out of an ERISA-governed employee welfare benefit plan.  29 U.S.C. § 1132(e)(1).

17.     Venue is proper in this district as the Plan was administered to Plaintiff in Newberry County, South Carolina, where she resides.  29 U.S.C. § 1132(e)(2).

## FACTS

18.     Plaintiff is 64 years old as of the date of this Complaint.  (Admin. R. 69.)

19.     Plaintiff worked as a travel set merchandiser for Crossmark's retail placement team for 10 years prior to her disability.  (Admin. R. 70.)

20.     Plaintiff traveled weekly to various grocery and retail stores to construct merchandise displays, store shelving, and marketing fixtures.  (Admin. R. 432, 453.)

21.     Plaintiff's job duties entailed "lifting, carrying, pushing, pulling 20-50 Lbs. occasionally, 10-25 frequently or up to 10 Lbs. constantly."  (Admin. R. 454.)

22.     Plaintiff participated in Crossmark's employee group welfare benefit plan (Group Policy No. FLK-960807), which made available LTD benefits to eligible Plan participants.  (Admin. R. 437.)

23.     LINA both insures and adjudicates claims made under the Plan.  (Admin. R. 246.)

24.     On June 29, 2017, Plaintiff suffered severe injuries in an elevated fall onto bare asphalt and injured her back, neck, and shoulder.

25.     Plaintiff was diagnosed with an elbow radial head fracture, lumbosacral stenosis and spondylosis, elbow edema, and sciatica.

26.     Plaintiff's injuries cause her severe upper and lower back pain, joint swelling, painful and limited lumbar flexion and extension, limited upper extremity flexion and extension, limited right lateral flexion, limited right rotation, lumbar lordosis, bilateral hip numbness, and limits Plaintiff's ability to sit, stand, and walk.

27. Plaintiff has tried nearly every conceivable treatment available to mitigate the painful effects of her impairments, including surgeries (left rotator cuff and hernia in 2018 and lower lumbar decompression in 2020), physical therapy, eight lumbar epidural steroid injections, lidocaine injections, physical therapy, chiropractic therapy, prescription nerve pain medication, and anti-inflammatories.

28. Plaintiff continues receiving treatment and medication for her impairments and their subsequent effects as of the date of this Complaint.

29. In January 2019, she was diagnosed with a heart condition and has since undergone heart catheterization, stent placement, and open-heart surgery.

30. Plaintiff's conditions have rendered her unable to return to work.

31. Plaintiff has not returned to work since her accident. (Admin. R. 487.)

32. Plaintiff has not worked since on or about June 23, 2017.

33. Plaintiff made a claim for benefits under Crossmark's short-term disability plan.

34. One or more of Defendants approved Plaintiff's claim for short-term disability benefits and paid her benefits all short-term disability benefits due.

35. Plaintiff timely filed a claim for LTD benefits from Defendants. (Admin. R. 487.)

36. Defendants have wrongfully denied Plaintiff all LTD benefits.

37. LINA denied Plaintiff's claim for LTD benefits by letter dated November 2, 2017. (Admin. R. 76.)

38. LINA based its denial on the grounds that Plaintiff "is able to perform within the medium level of physical demand." (Admin. R. 28.)

39. LINA's November 2, 2017 denial letter defines medium physical demand as "exerting 20 to 50 pounds of force occasionally, or 10 to 25 pounds of force frequently, or

5

greater than negligible up to 10 pounds of force constantly to move objects." (Admin. R. 28.)

40.     However, LINA's conclusion that Plaintiff is able to meet this demand runs counter to the conclusions reached by Plaintiff's treating physicians.

41.     Plaintiff's orthopedic surgeon placed her on light duty with physical lifting to not exceed two pounds, and this restriction remained in effect through the date that LINA denied Plaintiff's claim. (Admin. R. 446, 466.)

42.     LINA's conclusion also contradicts the conclusions reached by Plaintiff's primary care physician, who, after completing a physical assessment report of Plaintiff per LINA's request, concluded that Plaintiff had limitations sitting, standing, walking, reaching (overhead, at desk level, and below the waist), grasping with her left hand, and lifting or carrying more than five pounds. The physician's report indicated that Plaintiff is not able to tolerate these activities for more than two hours and thirty minutes in duration. (Admin. R. 407-408.)

43.     Further, LINA's conclusion that Plaintiff can perform the material duties of her job even contradicts Plaintiff's employer, Defendant Crossmark, which indicated that it was unable to accommodate Plaintiff's light-duty restrictions. (Admin. R. 277-278.)

44.     Plaintiff timely appealed LINA's denial. (Admin. R. 76.)

45.     LINA upheld its denial on or about January 30, 2018, on the same grounds as its initial denial. (Admin. R. 13.)

46.     Plaintiff appealed this decision once again, on or about March 12, 2018. (Admin. R. 10.)

47. Additional medical evidence was included in the Administrative Record during Plaintiff's second appeal, including a visit summary from Plaintiff's orthopedic surgeon, who indicated that Plaintiff made no improvement in her impairments and that she would be referred to a Pain Management specialist for nonoperative therapy. (Admin. R. 269.)

48. Despite the direct medical assessments included in the Administrative Record supporting Plaintiff's claim of disability, LINA issued a final denial by letter dated May 23, 2018, citing that the record contained no evidence to support functional impairment. (Admin. R. 2.)

49. LINA's denials were based largely on the opinions of third-party medical reviewers it hired to assess Plaintiff's disability claim. The opinions espoused by these reviewers contradict direct reports taken by Plaintiff's medical providers. Said reviewers were not independent. Rather, they were operating under a conflict of interest.

50. For example, Roger Belcourt, one of the medical reviewers paid to assess Plaintiff's claim, contended in his May 17, 2017 report that Plaintiff's "functional limitations are not supported from 07/30/17 and forward." (Admin. R. 253.) This, despite the fact that he concedes that Plaintiff was "moderately impaired" until 07/29/17.

51. However, Darryl Austin, PT, Plaintiff's physical therapist, reported that Plaintiff's Oswestry Disability Index score was 46% (Admin. R. 366.) Scores ranging between 41% and 60% are indicative of severe disability.

52. That same physical therapist indicated to LINA that he would be unable to perform a functional capacity exam, as LINA requested, since Plaintiff was receiving epidural injections at the time of LINA's request. (Admin. R. 353.) LINA's medical reviewer then

used this lack of examination as a presumption that one was not needed. (Admin. R. 253.)

53. Another consultant, Harry Steinman, reached his conclusion at least in part on the notion that Plaintiff required no functional restrictions (Admin. R. 292), despite the fact that one of Plaintiff's orthopedic surgeons placed her on a 10-pound lifting restriction. (Admin. R. 266.)

54. Regardless, the Plan does not explicitly require the degree of objective evidence that LINA or its paid medical reviewers seem to require, and the there is no language in the Plan that specifically addresses the evaluation of claims involving subjective complaints of pain.

55. For some symptoms, Plaintiff produced the only type of evidence a claimant in her situation could produce: her own description of the severity of her subjective symptoms, and her treating physicians' opinions that the pain and fatigue rendered her unable to work. As the Plan contains no provision precluding Plaintiff or her physicians from relying on these subjective complaints to evidence disability, LINA cannot reasonably deny her claim because of such reliance.

56. In short, LINA's denials fail to explain how the conclusions reached by its paid medical consultants creates any significant reason to doubt the correctness of the opinions offered by Plaintiff's own physicians.

57. LINA also erred by allowing medical records belonging to a <u>different disability claimant</u> to enter Plaintiff's Administrative Record. (Admin. R. 468-489.)

58. These medical records, despite not belonging to Plaintiff, remained in Plaintiff's Administrative Record for the duration of her administrative appeal.

59.     LINA then sent this tainted claim file to the paid medical consultants it hired to review Plaintiff's claim.

60.     <u>LINA allowed its paid, third-party medical reviewers to issue conclusions on Plaintiff's disability claim based on medical records not belonging to her.</u>

61.     LINA then based its wrongful denial of Plaintiff's LTD claim in large part due to the conclusions of these medical reviewers.

62.     Upon information and belief, LINA did not address this error to its three paid medical reviewers.

63.     LINA most certainly did not address this error to Plaintiff.

64.     In fact, at least two of the three medical reviewers– Roger Belcourt and Ramin Rabbani– took these records into consideration before issuing an opinion on Plaintiff's claim.  (Admin. R. 253, 260.)

65.     As a result of Defendants' wrongful denial of benefits, Plaintiff has suffered substantial financial loss from having to use savings to support herself, and has been forced to incur significant legal fees, costs, and expenses to secure her rightful benefits.

66.     Plaintiff remains unable to work her own occupation or any occupation.

67.     Plaintiff fully exhausted all administrative remedies.  (Admin. R. 2.)

**FOR A FIRST CAUSE OF ACTION**
(For benefits, taxable costs, interest, and attorney's fees
Pursuant to ERISA,
29 U.S.C. §§ 1132(a)(1)(B) and (g))

68.     Plaintiff incorporates all the preceding paragraphs of this Complaint as if fully set forth in this section.

69.     Plaintiff is disabled, as that term is defined by the Plan.

70. At all times relevant to this lawsuit, Defendant LINA was the claims administrator of the Plan.

71. At all times relevant to this lawsuit, Defendant LINA was the insurer of the Plan.

72. At all times relevant to this lawsuit, Defendant LINA was a fiduciary of the Plan.

73. Plaintiff timely made a claim for LTD benefits pursuant to the Plan.

74. Defendants' denial of benefits was unreasonable under ERISA, 29 U.S.C. § 1132(a)(1)(B) for one or more of the following particulars:

   a. LINA has a structural conflict of interest as it insures the Plan and adjudicates claims for benefits made under it;

   b. LINA's denial letters constitute a failure to provide Plaintiff a specific reason for Defendants' denial of benefits to Plaintiff;

   c. The opinions espoused by LINA's paid medical reviewers— that Plaintiff can perform the material functions of her job—directly contradict the substantial evidence in the Record, including medical conclusions from Plaintiff's treating physicians as well as the opinion of her employer;

   d. LINA's paid medical reviewers were not independent;

   e. LINA's paid medical reviewers were operating under a conflict of interest;

   f. LINA improperly imposed an evidentiary standard not required under the Plan for Plaintiff and her providers to document the validity of her disability; and/or,

   g. LINA's medical reviewers issued conclusions on Plaintiff's claim based on an Administrative Record tainted with medical files not belonging to Plaintiff.

75. As a result of Defendants' unreasonable denial of benefits, Plaintiff has been forced to incur significant legal fees, costs, and expenses to secure her rightful benefits.

76. Defendants have the ability to satisfy an award of attorney's fees under 29 U.S.C. § 1132(g), and awarding Plaintiff reasonable attorney's fees would not be a hardship on Defendants.

77. Awarding attorney's fees would likely deter any continued mismanagement and mishandling of claims for benefits from this Plan so as to prevent this type of situation from occurring to the many other participants in Defendants' Plan, who are eligible for similar benefits and would suffer substantial hardships in seeking remedy.

78. Awarding Plaintiff reasonable attorney's fees is part of the legislative intent of Congress expressed in 29 U.S.C. § 1001(b) in that ERISA was enacted to protect the interest of welfare plan participants by providing for appropriate remedies and sanctions when ERISA or benefit plans subject to it are violated.

79. Based upon the foregoing, Plaintiff is entitled to an Order declaring the existence of her entitlement to long-term disability benefits under the Plan; an Order requiring Defendants to provide said benefits; to an Order granting Plaintiff reasonable attorney's fees, prejudgment interest, costs, expenses incurred in connection with this lawsuit pursuant to ERISA, 29 U.S.C. Section 1132(g)(1); and for such other equitable relief as this Court deems just and proper.

**FOR A SECOND CAUSE OF ACTION
AS TO DEFENDANT LINA ONLY**
(Improper Claims Procedure,
29 U.S.C. § 1024(b)(4))

80. Plaintiff incorporates paragraphs 1-67 of this Complaint as if fully set forth in this section.

81. Under ERISA, every employee benefit plan shall afford a plan participant whose claim for benefits has been denied a reasonable opportunity for a full and fair review of the fiduciary's decision to deny the claim.

82. The U.S. Department of Labor regulation established to protect this procedural fairness in ERISA claims such as Plaintiff's is enabled under 29 U.S.C. § 1133 and is codified at 29 C.F.R. § 2560.503-1 (the "Regulation").

83. The Regulation requires that the Administrator's claims procedures contain processes and safeguards designed to ensure and verify that claim determinations are made in accordance with governing plan documents.

84. The Regulation additionally requires that the plan provide a reasonable claims procedure that would yield a decision on the merits of the claim.

85. LINA violated this Regulation by allowing its paid medical reviewers to make medical conclusions on Plaintiff's disability claim based on records not belonging to her.

86. At least two of LINA's three paid medical reviewers took these records into consideration when assessing Plaintiff's claim of disability.

87. LINA then based its wrongful denial of Plaintiff's benefits at least in part on the conclusions of these medical consultants.

88. LINA's claims procedures were improper and prejudiced Plaintiff's claim for benefits.

89. Further, LINA's actions were negligent and unlawful.

90. Based upon the foregoing, Plaintiff seeks reasonable attorney's fees, prejudgment interest, costs, expenses incurred in connection with this lawsuit pursuant to ERISA, 29 U.S.C. § 1024(b)(4), and such other equitable relief as this Court deems just and proper.

**WHEREFORE,** having fully stated her Complaint against the Defendants, Plaintiff prays for a declaration of entitlement to the long term disability benefits she seeks pursuant to 29 U.S.C. §1132(a)(1)(B), attorney's fees and costs pursuant to 29 U.S.C. §1132(g), and such other and further relief as this Court deems just and proper, including pre-judgment interest on all benefits due from the point at which benefits were payable through the time of judgment.

Respectfully submitted,

s/Nekki Shutt
Nekki Shutt (Fed. Bar No.:6530)
BURNETTE SHUTT & MCDANIEL, PA
Post Office Box 1929
Columbia, South Carolina 29202
Tel.  (803) 904-7912
Fax  (803) 904-7910
Nsutt@BurnetteShutt.law

**ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina

October 29, 2020